# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| NICHOLAS COVELLO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 04 C 2212 |
| ) | |
| CITY OF CHICAGO, ) | Judge Ruben Castillo |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Nicholas Covello, an employee of the City of Chicago ("City"), sued the City for national origin discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq* ("Title VII"), after he received a time-served suspension. (R. 1, Compl.) The City has moved for summary judgment on all of Covello's claims, alleging that Covello's claims are precluded under the doctrine of *res judicata* because they were raised in Covello's prior lawsuit against the City, or, in the alternative, because Covello fails to state a prima facie case of race discrimination or retaliation. (R. 39, Defs.' Mot. for Summ. J.)

## FACTS[1]

Covello has been employed by the City since 1981, when he was hired as a building inspector. (R. 44, Pl.'s Resp. to Def.'s Facts ¶ 9.) He was born in the United States, has an Italian surname, and his ancestry is Italian. (*Id.* ¶ 4.) After twenty years of employment with the

---

[1] These facts are derived from the parties' statements of facts filed pursuant to Local Rule 56.1(b). Unless otherwise indicated, the facts included herein are undisputed. In his response to the City's statement of facts, Covello often does not admit or deny a particular fact, in contravention of the Local Rules. This Court "will accept a fact properly proposed by one side as undisputed unless the other side properly responds to the proposed fact and establishes that it is in dispute." *Witte v. Wis. Dep't of Corr.*, 434 F.3d 1031, 1036 (7th Cir. 2006).

City, Covello brought suit, claiming that he was discriminated against based on his Italian national origin.

## I. 2002 Federal Lawsuit

In January 2002, Covello sued the City for national origin discrimination in violation of Title VII, in *Covello v. City of Chicago*, No. 02-151 (N.D. Ill. filed Apr. 16, 2002). In that case, Covello alleged that he was "denied pay increases, harassed, and intimidated by the City of Chicago and Robert L. Forgue because he is an Italian-American. . . . Further, Plaintiff has been assigned to a desk job by Defendants and has been subjected to derogatory remarks about his ethnicity by Robert L. Forgue."[2] (2002 Compl. ¶ 12.) After briefing, Judge Holderman granted summary judgment in favor of the City on Covello's hostile work environment claims. (R. 44, Pl.'s Resp. to Def.'s Facts ¶ 37.) *See Covello v. City of Chicago*, No. 02 C 0151, 2003 WL 182929 (N.D. Ill., Jan. 27, 2003). A bench trial on the remaining discrimination claims followed in August 2003 in front of visiting Judge Samuel King. Judge King ruled against Covello on all of his remaining claims, finding that the alleged adverse actions against Covello were based on valid, non-discriminatory reasons, not discrimination. Specifically, Judge King found that the City legitimately denied Covello pay increases and assigned him to a desk job due to his poor performance as a building inspector. (R. 41, Def.'s Facts, Ex. 2, J. King Op. ¶¶ 8-9.)

## II. Termination/Suspension Proceedings Against Covello

After termination of the suit, Covello continued working for the City. In 2003, Covello

---

[2]Although neither party submitted the complaint from this earlier lawsuit —despite the City's *res judicata* arguments —this Court may take judicial notice of matters in the public record, including court documents filed in earlier cases. *See Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994).

was a building inspector in the Demolition Bureau of the Department of Buildings. (R. 44, Pl.'s Resp. to Def.'s Facts ¶ 10.) At the time, Covello owned a parcel of real property at 71 W. Chicago Ave. in Chicago, Illinois. (*Id.* ¶ 11.) The property has a commercial building on it, and Covello leased space in the building to a company, Chicago Print, Inc., in April 2003. (*Id.*)

That same month, the Department of Buildings received a report that illegal construction was being performed at the Chicago Ave. property. (*Id.* ¶ 13.) The report alleged that Covello was performing construction work on his Chicago Ave. property without a building permit, in violation of the City of Chicago Municipal Code. (*Id.*) In response to this report, the Commissioner of the Department of Buildings, Norma Reyes, instructed Department of Buildings investigator Michael Tibbs to go to the property, interview the tenants, and take pictures of the site to determine whether there was any truth to the allegations. (*Id.* ¶¶ 12,14.) After visiting the property and interviewing both the manager and owner of Chicago Print, Tibbs determined that substantial construction work was being done at 71 W. Chicago Ave. without the required plans or permits from the City. (*Id.* ¶¶ 15-20.) Tibbs reported his findings to Reyes, who then instructed Charles Killman, Assistant Building Commissioner, to begin termination proceedings against Covello. (*Id.* ¶ 19.) On May 1, 2003, Covello went on administrative leave, and on May 12, 2003—after submitting his written rebuttal to the charges—Covello was discharged. (*Id.* ¶¶ 22-23.)

Covello appealed his termination before the City's Personnel Board in November and December 2003. (*Id.* ¶ 24.) On January 16, 2004, the Hearing Officer issued a report recommending that the discharge be reduced to a time-served suspension. (*Id.*; R. 41, Def.'s Facts, Ex. 8, Circuit Ct. Op. at 2.) On February 19, 2004, the Personnel Board adopted the

3

Hearing Officer's recommendation and ordered that Covello be reinstated. (*Id.*) Covello returned to his position on April 5, 2004. (*Id.*)

Despite the fact that he was reinstated, Covello appealed his suspension to the Circuit Court of Cook County, arguing that the City improperly failed to inform him that he was the subject of an investigation and that the time-served suspension was an arbitrary and capricious penalty. (*Id.*) The Circuit Court Judge remanded the case to the Personnel Board to make findings regarding the penalty, without which the Judge could not determine whether the imposition of the suspension was arbitrary and capricious. (*Id.* at 6-7.)

On remand from the Circuit Court of Cook County, the Personnel Board specifically adopted the findings of its Hearing Officer and issued a revised decision with facts supporting the penalty issued. (R. 44, Pl.'s Resp. to Def.'s Facts ¶ 26.) Covello did not appeal the Personnel Board's revised findings, and he does not believe that the Personnel Board or its Hearing Officer retaliated or discriminated against him based on his national origin. (*Id.*)

Covello filed the instant complaint in federal court against the City on March 25, 2004. (R. 1.) On July 16, 2004, this Court stayed the case pending the disposition of the aforementioned related matter in state court. (R. 9.) The Court reopened this case on Covello's motion on January 18, 2006. (R. 13.)

## LEGAL STANDARDS

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A

genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must "construe all facts in the light most favorable to the nonmoving party and draw all reasonable and justifiable inferences in favor of that party." *King v. Preferred Tech. Group*, 166 F.3d 887, 890 (7th Cir. 1999). Weighing evidence and making credibility decisions are jury functions, and it is not appropriate for a judge to assume those functions when deciding a summary judgment motion. *Anderson*, 477 U.S. at 255. Accordingly, we apply the summary judgment standard with special scrutiny to employment discrimination cases, where issues of intent and credibility often are paramount. *Krchnavy v. Limagrain Genetics Corp.*, 294 F.3d 871, 875 (7th Cir. 2002).

## ANALYSIS

After Covello was reinstated to his job with a time-served suspension, he filed this complaint alleging national origin discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and 42 U.S.C. § 1981. Covello alleges that he was denied pay increases, harassed, fired, and intimidated by the City of Chicago because he is Italian-American and because he filed a charge of discrimination against the City in 2002. (R. 1, Compl. ¶ 12.)

### I. Title VII

#### A. *Res Judicata* and Collateral Estoppel

The City initially claims that Covello's Title VII claims are barred by *res judicata* or collateral estoppel. Under the doctrine of *res judicata*, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been

raised in that action." *Highway J Citizens Group v. U.S. Dept. of Transp.*, 456 F.3d 734, 741 (7th Cir. 2006) (citations and quotations omitted). The three requirements for *res judicata* are: "(1) an identity of the parties or their privies; (2) an identity of the causes of actions; and (3) a final judgment on the merits." *Id.* The second requirement for *res judicata*—which requires that the old and new claims emerge from "the same core of operative facts"—is not met in this case. *Id.* Here, Covello alleges different facts than he did in his previous discrimination lawsuit. In his 2002 lawsuit, Covello claimed that acts by Department of Buildings employee Robert L. Forgue and denials of wage increases and promotions constituted national origin discrimination. By contrast, in the instant case, Covello's primary argument is that his suspension[3] in 2003 constituted discrimination. In addition, Covello makes no mention of Forgue in his current lawsuit, and his allegations of other discriminatory acts, including denials of wage increases and promotions, also appear stem from the time period after the first lawsuit.

Collateral estoppel also does not apply in this case. The doctrine of collateral estoppel provides that "once a court has decided an issue of fact or law necessary to its judgment, that decision is conclusive in a subsequent suit based on a different cause of action involving a party to the prior litigation." *Harrell v. U.S. Postal Serv.*, 445 F.3d 913, 921 (7th Cir. 2006) (citations and quotations omitted). Neither judge involved in the previous case, however, decided an issue of fact or law that is conclusive in the instant suit. Judge Holderman's decision to dismiss Covello's hostile work environment claim in the previous lawsuit—based on allegations of facts occurring before 2002—does not determine whether Covello can state a claim for hostile work

---

[3]For purposes of simplification, the Court will herein refer to Covello's termination, later reduced to a time-served suspension by the Personnel Board, as his "suspension."

environment based on a different set of facts. Contrary to the City's arguments, Judge Holderman did not determine as a matter of law that conducting an organized crime investigation or making occasional allegedly discriminatory remarks could never constitute discrimination. (R. 40, Def.'s Mem. in Supp. of Summ. J. Mot. at 3.) Similarly, Judge King's decision to rule against Covello on his claim that he was discriminatorily denied merit increases in pay before 2002 does not conclusively determine whether the City's denial of pay increases after 2002 was discriminatory.

## B. Disparate Treatment

As the City's preclusion arguments fail, this Court now turns to the City's argument that Covello has failed to establish a prima facie case of discrimination; i.e., that he has failed to prove he was treated differently than similarly situated non-Italian-Americans. To prove discrimination based on disparate treatment, Covello must prove that he was intentionally discriminated against under either the direct or indirect method of proof. "Direct evidence is evidence, which, if believed by the trier of fact, will prove the particular fact in question without reliance upon inference or presumption." *Rudin v. Lincoln Land Cmty. Coll.*, 420 F.3d 712, 720 (7th Cir. 2005). Covello argues that his deposition testimony as to alleged adverse actions against him sets forth direct evidence of discrimination. (R. 44, Pl.'s Resp. Br. at 2-3.) A plaintiff's own testimony as to discrimination, however, is far from an "admission by the decision-maker that his actions were based upon prohibited animus," or a "convincing mosaic" of circumstantial evidence that "allows a jury to infer intentional discrimination by the decisionmaker," which is generally required to prove discrimination under the direct method of proof. *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004).

As Covello presents no direct evidence of discrimination, this Court proceeds under the indirect, burden-shifting method of proof first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). To survive summary judgment under the indirect method, Covello must establish a prima facie case of national origin discrimination by proving that: (1) he was a member of a protected class; (2) he was performing his job satisfactorily; (3) he experienced an adverse employment action; and (4) similarly situated employees, not in the protected class, were treated more favorably. *Rhodes*, 359 F.3d at 504. If Covello establishes a prima facie case, the burden shifts to the City to articulate a legitimate, nondiscriminatory reason for its adverse employment decision. *Pugh v. City Of Attica, Ind.*, 259 F.3d 619, 626 (7th Cir. 2001). If the City meets its burden, Covello must prove by a preponderance of the evidence that the reason proffered by the City was a pretext for intentional discrimination. *Id.*

### 1.   Adverse Employment Action

The City does not dispute that Covello, as an Italian-American, is a member of a protected class. In addition, although the City hints that Covello's performance may have been less than stellar, the City does not argue that Covello has failed to establish a prima facie case based on his unsatisfactory job performance.[4] (R. 40, Def.'s Mem. in Supp. of Summ. J. Mot. at 5.) Instead, the City argues that Covello fails to establish the third and fourth prongs of his prima facie case: adverse employment actions and similarly situated employees.

First, the City argues that none of the actions alleged by Covello constitute actionable

---

[4] In its response to Covello's statement of facts, the City alleges that Covello has not been promoted because his work performance and conduct as an inspector is and has been deficient. (R. 47, Def.'s Resp. to Pl.'s Facts ¶ 14.) Under the Local Rules, however, a response to the statement of facts is not the proper place to set out allegations facts, and the City should have alleged any facts regarding Covello's performance in the City's statement of facts. L.R. 56.1.

8

adverse employment actions except for Covello's suspension. The Seventh Circuit has defined an adverse employment action as "more disruptive than a mere inconvenience or an alteration of job responsibilities;" rather, an employee must show that "material harm has resulted from the challenged actions." *Traylor v. Brown*, 295 F.3d 783, 788-89 (7th Cir. 2002) (citations and quotations omitted). In other words, "[t]he adverse action must materially alter the terms and conditions of employment." *Whittaker v. N. Ill. Univ.*, 424 F.3d 640, 648 (7th Cir. 2005) (citations and quotations omitted). "A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Traylor*, 295 F.3d at 788-89.

Thus, the reprimands Covello allegedly received for inappropriate use of a Nextel radio, loafing on the job, and failing to comply with sick leave procedures—as well as Covello's supervisors' admonishments to Covello to produce more and better work—are not actionable adverse employment actions. (See R. 47, Def.'s Resp. to Pl.'s Facts ¶¶ 4-7.) Negative evaluations and written warnings by themselves do not result in tangible job consequences, and therefore are not adverse employment actions actionable under Title VII. *Whittaker*, 424 F.3d at 648; *see also Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996) (holding that poor evaluations do not amount to an adverse employment action). Likewise, Covello's claim that he was denied a sick day when he failed to follow proper procedures does not amount to an adverse action because it had only a negligible impact on his income and did not cause him material harm. (R. 47, Def.'s Resp. to Pl.'s Facts ¶¶ 6-7.) *See Rhodes*, 359 F.3d at 505 (holding that being marked absent without pay did not cause plaintiff material harm). Covello's complaint that

9

he received assignments far from his home does not qualify as an adverse employment action either (R. 47, Def.'s Resp. to Pl.'s Facts ¶ 4), because that has even fewer tangible job consequences than a job transfer—which the Seventh Circuit has held does not constitute an adverse employment action where it does not involve a reduction in pay and effects no more than a minor change in working conditions. *Williams v. Bristol-Myers Squibb Co.*, 85 F.3d 270, 274 (7th Cir. 1996). Finally, a co-worker's totally inappropriate comment (calling Covello a "lazy fucking dago")—which Covello allegedly heard second-hand (R. 44, Pl.'s Resp. to Def.'s Facts ¶ 37)—does not constitute a material adverse action because "general hostility and comments do no qualify as actionable adverse employment actions unless the hostility was severe and pervasive."[5] *Griffin v. Potter*, 356 F.3d 824, 829 (7th Cir. 2004).

### 2.      Treatment of Similarly Situated Employees

As to the one established adverse employment action—Covello's suspension—the City argues that Covello does not satisfy the fourth prong of the prima facie case: that similarly situated non-Italian-American employees were treated more favorably. "To be similarly situated to another employee, [the plaintiff] must show that the employee is directly comparable in all

---

[5] Covello also generally alleges that he has yet to receive an arbitration award he is owed by the City and that he was not promoted because he is not Irish. (R. 47, Def.'s Resp. to Pl.'s Facts ¶¶ 1, 13.) Covello, however, has presented no evidence of the arbitration award or of any promotions he was denied, and thus he cannot establish that these were adverse employment actions. In addition, the City surmises from Covello's deposition that he also claims that his failure to receive the Inspector of the Quarter Award constitutes an adverse employment action. However, the failure to receive an award does not constitute an adverse employment action because "it is wholly within the employer's discretion to grant or deny and is not a component of the employee's salary." *Tyler v. Ispat Inland Inc.*, 245 F.3d 969, 972 (7th Cir. 2001); *see also Miller v. Am. Family Mut. Ins. Co.*, 203 F.3d 997, 1006 (7th Cir. 2000) (holding that denial of a bonus was not an adverse employment action). In Covello's case, the award was even less significant, as it did not involve money or any other type of substantive employment gain.

material respects." *Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 979 (7th Cir. 2004). "To determine whether two employees are directly comparable, a court looks at all the relevant factors, which most often include whether the employees (i) held the same job description, (ii) were subject to the same standards, (iii) were subordinate to the same supervisor, and (iv) had comparable experience, education, and other qualifications—provided the employer considered these latter factors in making the personnel decision." *Hill v. Stoughton Trailers, LLC*, 445 F.3d 949, 952 (7th Cir. 2006) (citations and quotations omitted).

Covello points to two non-Italian Americans whom he claims did building work without a permit but were not suspended as he was.[6] First, in 2002, then Deputy Commissioner of the Inspection Bureau, Edward Severns, took down his garage without a building permit. (R. 47, Def.'s Resp. to Pl.'s Facts ¶ 23.) Severns obtained a permit for rebuilding his garage, but the work done on the garage exceeded his building permit. (*Id.* ¶ 24.) Upon discovery of this violation—which occurred while Severns was on vacation—then Commissioner of the Department of Buildings, Mary Richardson-Lowry, placed Severns on unpaid leave for a week, and a stop work order was placed on the construction. (R. 41, Def.'s Facts ¶¶ 31-32.) When Severns returned from vacation, he was ordered to submit new plans for the garage, and the work was redone in compliance with the building code. (*Id.* ¶ 32.) Severns paid a fine double the cost of his permit. (R. 47, Def.'s Resp. to Pl.'s Facts ¶ 25.) While Severns indeed received a lesser punishment for violating the building code, he was not similarly situated to Covello. Unlike

---

[6] Covello's reference to former City employee Joseph Pucci is inapposite because the parties believe that Pucci is Italian-American, he was not a building inspector, and Covello alleges that Pucci performed work on his property without a permit prior to 1989. (R. 47. Def.'s Resp. to Pl.'s Facts ¶ 34.)

11

Covello, Severns held a building permit – it just did not cover the extent of his work and demolition of his garage. In addition, Severns was a supervisor, whereas Covello was not, and the ultimate personnel decision in Severns' case came from a different building commissioner; when Covello was suspended in 2003, Severns was no longer employed by the Department of Buildings. (R. 41, Def.'s Facts ¶¶ 28, 32.) Thus, the decision to discipline the two employees differently is not evidence of discrimination.

Second, Covello claims Patrick Guilfoyle was similarly situated to him. However, unlike Covello, Guilfoyle was an electrical inspector with the Department of Buildings. (*Id.* ¶ 33.) In addition, the City was not aware that Guilfoyle had construction work done on his property without a permit until after the work was performed—when Covello so alleged during the Department of Buildings Personnel Board hearing in connection with Covello's discharge. (*Id.*) Covello provides no other evidence of Guilfoyle's or Severns' experience, education, or other qualifications. Thus, Guilfoyle, like Severns, was not similarly situated to Covello, and thus Covello cannot establish a prima facie case of national origin discrimination.

### C. Hostile Work Environment

Next, Covello claims that he was harassed and subject to a hostile work environment because of his Italian-American heritage. To succeed on this claim, Covello must show: (1) he was subject to unwelcome harassment; (2) the harassment was based on his national origin; (3) the harassment was severe or pervasive so as to alter the conditions of his working environment by creating a hostile or abusive situation; and (4) there is a basis for employer liability. *Smith v. Ne. Ill. Univ.*, 388 F.3d 559, 566 (7th Cir. 2004). The work environment must be both subjectively and objectively hostile; that is, the victim must have perceived the environment to be

hostile <u>and</u> a reasonable person would find the environment hostile. *Id.* Courts look to the totality of circumstances including "the frequency of conduct, its severity, whether it is physically threatening or humiliating, or an offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Worth v. Tyer*, 276 F.3d 249, 267 (7th Cir. 2001) (citations and quotations omitted).

Covello cannot meet the standard for establishing a prima facie case of hostile work environment. First, he makes no attempt to claim that the alleged harassment would be hostile and offensive to a reasonable person. He merely argues that "there is no doubt that Covello found the actions and the environment offensive and hostile. The hostile and offensive nature of the environment caused Covello to ultimately file charges of discrimination with the EEOC and file his suit." (R. 44, Pl.'s Resp. Br. at 8.) He also repeats the failed allegations of his disparate impact claim, that: an employee once insulted his ethnicity; he was passed over for unspecified promotions; he was "intimidated" in unspecified ways—because he did not have a work permit for the Chicago Avenue property; and he was assigned to work at sites far from his residence. (*Id.*) Isolated instances of misconduct, however especially comments that were not even directed to Covello -will not support a hostile work environment claim. *See Ngeunjuntr v. Met. Life Ins. Co.*, 146 F.3d 464, 467 (7th Cir. 1998). Covello's circular and unsubstantiated argument that he was subject to a hostile work environment because "Chris Kozicki wanted him subjected to a hostile work environment" does not save his claim. (R. 44, Pl.'s Resp. Br. at 8.) Thus, based on the evidence, Covello's hostile work environment claim fails, as he has not shown that the alleged harassment was so severe or pervasive as to alter the conditions of his working environment.

### D. Retaliation

Lastly, Covello alleges the City retaliated against him because he filed a charge of discrimination against the City in 2002. Title VII makes it unlawful "for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e-3(a). As with a disparate impact claim under Title VII, a plaintiff may prove retaliation by using either the direct method or the indirect, burden-shifting method. *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 662 (7th Cir. 2006). Under the direct method, a plaintiff must show "(1) he engaged in statutorily protected activity; (2) he suffered an adverse action taken by the employer; and (3) there was a causal connection between the two." *Id.* at 663 (citations and quotations omitted). Covello's lawsuit is indeed statutorily protected, and as explained above, the only actionable adverse action taken by the City was his suspension. Covello, however, has presented no direct evidence of a causal connection, besides timing, between the suspension and his 2002 lawsuit. As the Seventh Circuit recently explained:

> [S]uspicious timing alone rarely is sufficient to create a triable issue. Moreover, while there is no bright-line rule as to the amount of evidence necessary to survive summary judgment under the direct method, it is clear that mere temporal proximity is not enough to establish a genuine issue of material fact.

*Id.* at 665 (7th Cir. 2006) (quoting *Moser v. Ind. Dep't of Corr.*, 406 F.3d 895, 903 (7th Cir. 2005); and *Wyninger*, 361 F.3d at 981). Moreover, the building department's independent investigation into the reports of illegal building on Covello's property breaks any causal connection between the timing of the 2002 lawsuit and Covello's suspension. *Byrd v. Ill. Dep't of Public Health*, 423 F.3d 696, 708 (7th Cir. 2005). Thus, this Court proceeds to the indirect

14

method of proof.

To prove retaliation under the indirect method, the plaintiff must establish a prima facie case of retaliation by showing that: "(1) he engaged in a statutorily protected activity; (2) he met the employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) he was treated less favorably than similarly situated employees who did not engage in statutorily protected activity." *Tomanovich*, 457 F.3d at 663 (citations and quotations omitted). As with Covello's claim of discrimination, if he can establish a prima facie case, the burden shifts to the City to present evidence of a non-discriminatory reason for the suspension, and if the City meets its burden, the burden shifts back to Covello to show that the City's reason is pretextual. *Id.* As with his disparate treatment claim, however, Covello's retaliation claim does not make it past the prima facie case because he does not show that he was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. Covello relies on the same employees and allegations here that he relies upon in his disparate treatment claim, and for the same reasons denoted above, Covello's claim fails.

## II. Section 1981

Covello raises the same discrimination and retaliation claims under section 1981 that he raised under Title VII. To allege that a city violated an individual's civil rights under section 1981, a plaintiff must allege that "(1) the City had an express policy that, when enforced, causes a constitutional deprivation; (2) the City had a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage within the force of law; or (3) plaintiff's constitutional injury was caused by a person with final policymaking authority." *McCormick v. City of Chicago*, 230 F.3d 319, 324

15

(7th Cir. 2000). Covello, however, does not allege or present any evidence that the City had any type of custom or policy to discriminate or retaliate against Italian-Americans. Thus, Covello's § 1981 claims, along with his Title VII claims, fail to withstand summary judgment.

## CONCLUSION

It is unfortunate that a long-term City employee believes he has been discriminated against because of his ethnic heritage. This Court has no tolerance for any type of racial or ethnic discrimination. Covello's subjective beliefs of discrimination, however, are not enough to proceed to trial in this case.

For the reasons set forth above, the City's motion for summary judgment is granted. (R. 39.) The Clerk is directed to enter judgment for the City.

ENTERED: _____
Judge Ruben Castillo
United States District Court

Dated: September 14, 2006